[Civ. No. 65141. Second Dist., Div. Five. Mar. 3, 1983.]

KATIE M. GREENE, Plaintiff and Appellant, v.
SAFECO INSURANCE COMPANY OF AMERICA,
Defendant and Respondent.

COUNSEL

Gilda R. Cohen for Plaintiff and Appellant.

Perona & Langer and Deborah Reid Kelley for Defendant and Respondent.

OPINION

**HASTINGS, J.**—Plaintiff Katie M. Greene (Greene) filed a complaint against Safeco Insurance Company of America (Safeco) for bad faith in failing to renew her car insurance policy. The demurrer of Safeco was sustained without leave to amend. Greene appeals from the order of dismissal.

About December 18, 1979, Greene purchased a policy of car insurance with Safeco for a six-month term. At the end of the six-month period, Greene received a premium notice and by payment of the premium, the policy was renewed for another six months. In April of 1980, plaintiff was involved in an automobile accident in which her vehicle was broadsided by a truck that ran a red light. There was never any question of liability on the part of the truck's owner and operator, and their insurer eventually reimbursed Safeco under the subrogation provisions of the contract of insurance. However, under Greene's insurance policy, Safeco undertook to repair her vehicle. A dispute arose as to the extent of damage to her vehicle. Numerous telephone calls were made to the

Safeco adjuster and Greene expressed unhappiness with the manner in which her claim was being handled. Eventually, it was determined that her car could not be properly repaired, and it was "totalled."

On November 4, 1980, Safeco notified Greene in writing "that they would not renew the policy of insurance when it expired" on December 18, 1980. Greene requested to know why the policy was not being renewed. In response to this request, Ed Johnson, personal lines underwriter for Safeco, stated the importance of having the insured's cooperation in settling a claim in a way that both sides get a proper settlement; that since they have not been able to work with her, they decided to terminate the coverage at that time. The policy was not renewed, and Greene had to purchase car insurance coverage at a higher rate with another company.

Greene argues that Safeco's failure to renew her insurance policy was a breach of the implied covenant of good faith and fair dealing; that she had a right to rely on Safeco's representations that her car would be repaired; and that Safeco, as her fiduciary, would act with integrity and fidelity. Instead, she was deprived of the use of a car for five months, was subjected to unfriendly representatives of the company and poor service, and in the end, her policy was not renewed. Consequently, she was damaged.

However, section 15(c) of Greene's insurance policy with Safeco states: "This agreement shall apply to each successive policy period which SAFECO consents to renew or continue this policy but nothing herein shall obligate SAFECO to renew or continue this policy beyond the expiration of any policy period."

Nonrenewal of automobile policies is regulated by statute in California. (Ins. Code, §§ 660-670.) Under section 663, "An insurer shall offer renewal of a policy, contingent upon payment of premium as stated in the offer, to an insured *unless the insurer mails or delivers to the named insured, at the address shown in the policy,* at least 20 days advance notice of nonrenewal. Such notice shall contain or be accompanied by a statement that upon written request by the named insured, made not later than one month following the expiration of the policy period, or delivered to the insurer, the insurer will notify the insured in writing, within 20 days of his request, the reason or reasons for such nonrenewal. . . ." It is Greene's contention that the provision requiring an insurer upon request to give the reason for a nonrenewal would be meaningless if it can be arbitrary and unreasonable under the facts of a given situation, therefore, she can challenge the insurer's good faith in this instance. Greene's argument would be plausible if it were not for section 667, which provides: "There shall be no liability on the part of, and no cause of action of any nature shall arise against . . . any insurer . . . for any statement made . . . in any written notice

of cancellation or nonrenewal, or in any other communication, oral or written, specifying the reasons for cancellation or nonrenewal, . . ."

At first blush one might question why the statute requires the insurer to state its reasons for not renewing a policy if any reason, good or bad, cannot be challenged by the insured. There is, however, an explanation. ■ An insurer has no legal duty to renew a policy of automobile insurance once a term has expired. The law is stated in 13A Appleman, Insurance Law and Practice (1976) section 7642, pages 409-410: "Both property and liability policies are considered to be term policies. Accordingly in the absence of any statutory provisions to the contrary, the insurer may refuse to renew them *for any reason whatsoever, or for no reason at all.*" (Italics added.) Sections 663 and 667 have kept this basic legal concept intact, but apparently to enlighten a puzzled insured when a nonrenewal notice is received, the requirement was added that the insurer must give the insured a reason upon request. Section 667 simply maintains the historic right of an insurer to not renew a policy, after appropriate notice, for any reason it chooses without subjecting it to a lawsuit for the reasons stated.[1] Although section 667 also applies to reasons given for *cancellation* of a policy, there is no inconsistency. Cancelled policies are governed by section 661.[2] Cancellation can only be made for the reasons stated therein and any other reason could be invalid, thus subjecting the insurer to possible liability. However, subdivision (d) of said section provides: "This section shall not apply to nonrenewal," again reaffirming the insured's absolute right of nonrenewal if legally noticed.

■ The type of automobile policy involved here is not the type of insurance which by its terms promises or guarantees renewal. It specifically provides: "This agreement shall apply to each successive policy period which SAFECO consents to renew or continue this policy *but nothing herein shall obligate SAFECO to renew or continue this policy beyond the expiration of any policy*

---

[1]This opinion is not, however, considering the possible criminal or civil liabilities that might be caused by an unlawful nonrenewal if such a situation could or does occur.

[2]Section 661 provides: "(a) A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:

"(1) Nonpayment of premium; or

"(2) The driver's license or motor vehicle registration of the named insured or of any other operator who either resides in the same household or customarily operates an automobile insured under the policy has been under suspension or revocation during the policy period or, if the policy is a renewal, during its policy period or the 180 days immediately preceding its effective date.

"(b) This section shall not apply to any policy or coverage which has been in effect less than 60 days at the time notice of cancellation is mailed or delivered by the insurer unless it is a renewal policy.

"(c) Modification of automobile physical damage coverage by the inclusion of a deductible not exceeding one hundred dollars ($100) shall not be deemed a cancellation of the coverage or of the policy.

"(d) This section shall not apply to nonrenewal."

*period."* (Italics added.) This language is clear and unambiguous, therefore, contrary to Greene's argument her policy did have a definite term. Greene received a written notice of the nonrenewal 44 days in advance of the policy's expiration date. She also received upon request the reasons for the nonrenewal. The policy expressly set forth the dates for its six-month term and provided for nonrenewal by the giving of at least twenty days advance notice. Generally, an offer of renewal is made only by the sending of a premium notice for the next policy term. The offer is then accepted by payment of the premium. We must therefore conclude that under the terms of Greene's policy and the applicable California statutes Safeco was not obligated in any way to offer renewal regardless of who was right or wrong in the dispute that arose over her property damage claim. In *Farmers Ins. Exchange* v. *Cocking* (1981) 29 Cal.3d 383, at page 390 [173 Cal.Rptr. 846, 628 P.2d 1], the Supreme Court noted that the decision of a carrier whether to offer, or of a prospective insured to accept, the various kinds of liability insurance is one which the Legislature reasonably might well leave to the insurer and the insured, respectively. To require liability coverage against the judgment of the contracting parties would constitute an unprecedented judicial interference into private contractual and economic arrangements.

The trial court did not err in granting Safeco's demurrer on the ground that the complaint failed to state a cause of action for bad faith.

The order of dismissal is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 28, 1983. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.