Opinion
 

 ORTEGA, J.
 

 Appellant Commissioner of Insurance of the State of California (Commissioner) appeals from a judgment granting respondent National Indemnity Company (National) a peremptory writ of mandamus. The issue is whether Insurance Code section 1861.03, subdivision (c)(1),
 
 [1]
 
 which restricts an insurer’s right to cancel and to refuse to renew “automobile insurance,” applies to commercial motor vehicle policies issued by National under its “Commercial Automobile Liability and Commercial Automobile Physical Damage” lines of coverage. We conclude section 1861.03, subdivision (c)(1) does not apply to National’s commercial motor vehicle policies and affirm the judgment.
 

 Facts
 

 In October 1988, National notified Roxani M. Gillespie, former Insurance Commissioner, that in November 1988 it would cease offering “insurance falling within the Commercial Automobile Liability and Commercial Automobile Physical Damage lines of insurance[.]” National decided to cease offering this coverage because it believed Proposition 103 would be approved by the voters. In National’s view, Proposition 103’s mandatory rollback of rates on certain policies in effect on or after November 8, 1988, would reduce National’s premiums on its commercial motor vehicle policies to an inadequate level.
 

 National stopped writing new commercial motor vehicle policies, and also began issuing notices of nonrenewal in October 1988 to its insureds whose commercial motor vehicle policies were due to expire. (§ 678.1, subd. (c).) National stopped renewing its outstanding commercial motor vehicle policies for the same reason that it had stopped writing new commercial motor vehicle policies. National never examined the individual policies to determine whether there were any other reasons for nonrenewal.
 

 As National predicted, the voters passed Proposition 103 on November 8, 1988. Among its provisions is section 1861.03, subdivision (c)(1), which is the subject of this appeal. That subdivision provides: “Notwithstanding any other provision of law, a notice of cancellation or nonrenewal of a policy for
 
 *197
 
 automobile insurance shall be effective only if it is based on one or more of the following reasons: (A) nonpayment of premium; (B) fraud or material misrepresentation affecting the policy or insured; (C) a substantial increase in the hazard insured against.”
 

 On February 9,1989, the Commissioner mailed a notice of noncompliance alleging that National’s failure to renew its commercial motor vehicle policies constituted a violation of section 1861.03, subdivision (c)(1).
 

 Procedural Background
 

 A.
 
 Administrative Hearing
 

 Upon receiving the notice of noncompliance, National requested a public hearing. At the administrative hearing, the parties stipulated that National never examined the nonrenewed policies to determine whether any of the reasons set forth in section 1861.03, subdivision (c)(1) existed.
 

 National contended that section 1861.03, subdivision (c)(1) does not retroactively apply to policies issued prior to the passage of the initiative. The retroactivity issue was later settled, however, when the California Supreme Court ruled that section 1861.03, subdivision (c)(1) retroactively applies to policies in effect when the initiative was enacted.
 
 (Calfarm Ins. Co.
 
 v.
 
 Deukmejian
 
 (1989) 48 Cal.3d 805, 826-831 [258 Cal.Rptr. 161,
 
 771
 
 P.2d 1247] (hereafter
 
 Calfarm).)
 

 In addition to the retroactivity issue, National asserted the drafters of Proposition 103 interchangeably used the terms “automobile insurance” (§ 1861.03, subd. (c)(1)) and “automobile insurance policy, as described in subdivision (a) of Section 660” (§ 1861.02, subd. (a)). According to section 660, subdivision (a), an automobile insurance policy is one which insures “a single individual or individuals residing in the same household, as named insured,” and applies only to private passenger vehicles and certain four-wheel motor vehicles. Commercial vehicle insurance, on the other hand, is treated separately under the Insurance Code as a form of “commercial insurance” (§ 675.5, subd. (b)), which by definition
 
 excludes
 
 private passenger “[a]utomobile insurance covered by Section 660 . . . .” (§ 675.5, subd. (d)(4).)
 

 National contended section 1861.03, subdivision (c)(1), which is limited to “automobile insurance,” does not apply to commercial insurance. And since commercial motor vehicle insurance is a form of commercial insurance (§ 675.5, subd. (b)), section 1861.03, subdivision (c)(1) is inapplicable to National’s nonrenewed policies.
 

 
 *198
 
 In further support of its position, National pointed out that in section 1 of the initiative, the drafters stated that “
 
 ‘automobile insurance
 
 rates shall be determined primarily by a driver’s safety record and mileage driven’ (emphasis added). This refers to the provisions of section 1861.02[, subdivision] (a), which prescribe the factors that may be used to determine rates for ‘automobile insurance, as described in subdivision (a) of Section 660.’ ” Accordingly, National contended, the drafters used the term “automobile insurance” in section 1861.03, subdivision (c)(1) in the same manner as in section 1 of the initiative, and intended to limit section 1861.03, subdivision (c)(1) to private passenger automobile insurance as described in section 660, subdivision (a).
 

 It is undisputed that the commercial motor vehicles insured by National are not private passenger automobiles covered by section 660, subdivision (a). According to the hearing testimony of Leslie J. Bailer, National’s assistant vice-president of underwriting and regional underwriting manager, the kinds of commercial vehicles insured by National included “many commercial types of automobiles, notably long-haul truckers, long-haul charter buses, local and intermediate commercial operations such as logging, sand and gravel operations . . . limousines . . . ambulances, invalid carriers, handicap buses, vans, many types of transportation.”
 

 National also presented undisputed evidence that commercial motor vehicle insurance is more readily available than private passenger automobile insurance. According to Bailer’s declaration, commercial insureds whose policies are cancelled or are not renewed have an easier time finding replacement insurance because the prior insurers may have acted for reasons that have nothing to do with the insureds’ risk.
 

 In addition, the declarations of both Bailer and Gleason Payne, a former insurance commissioner with 45 years of experience in the industry, stated that commercial insureds can undertake loss control measures (such as training or disciplining unsafe drivers and adopting safety inspection programs) to reduce their risk problems. Individual policyholders, on the other hand, cannot readily undertake similar loss control measures.
 

 The declarations further indicated that the application of section 1861.03, subdivision (c)(l)’s mandatory renewal provisions to commercial motor vehicle coverage would impair the insurers’ leverage to induce commercial insureds to undertake loss control reforms. Moreover, application of section 1861.03, subdivision (c)(1) to commercial motor vehicle coverage would eliminate the 60-day “look-see” or inspection period provided to insurers of commercial motor vehicles under section 676.2, subdivision (b). The net
 
 *199
 
 result of applying section 1861.03, subdivision (c)(1) to commercial motor vehicle insurance would be to reduce the availability of such insurance.
 

 National also submitted the declaration of Forrest Knitter, National’s attorney, who reviewed the laws of 47 states in which National is a licensed insurer writing commercial motor vehicle insurance. According to Knitter, if section 1861.03, subdivision (c)(1) is applied to commercial motor vehicle policies, California would be the first state to impose such a requirement on commercial motor vehicle policies.
 

 In addition to these undisputed declarations, National submitted two exhibits. The first is the petition filed with the Commissioner by 16 organizations, including Voter Revolt to Cut Insurance Rates which drafted Proposition 103. The petition requested that the Commissioner “conduct immediate emergency rulemaking proceedings ... to implement Insurance Code Section 1861.03[, subdivision] (c).” The petition stated in relevant part: “Part of the initiative (section 1861.03) included mandatory renewal of
 
 private passenger automobile insurance policies,
 
 except under specified circumstances.” (Italics added.) National asserted that this language demonstrates that the drafters intended to limit section 1861.03, subdivision (c)(1) to private passenger automobile insurance only.
 

 The second exhibit is a model act prepared by the National Association of Insurance Commissioners. In the Model Automobile Insurance Declination, Termination and Disclosure Act, the term “Automobile insurance policy” is defined as a policy that insures “a natural person ... or one or more related individuals resident of the same household,” and applies to private passenger motor vehicles and certain four-wheel motor vehicles used for nonbusiness purposes only. National asserted that this definition demonstrates that the term “automobile insurance” is commonly understood in the industry to be limited to private passenger automobile insurance only.
 

 At the hearing, the Department of Insurance (Department) submitted “no evidence regarding the statutory history of or intent behind” section 1861.03, subdivision (c)(1). The Department also failed to submit any oral testimony or documentary evidence.
 

 The Department contended that because section 1861.02, subdivision (a) is limited to “automobile insurance . . . , as described in subdivision (a) of section 660,” the hearing officer (Peter Groom, a deputy insurance commissioner) should not infer that section 1861.03, subdivision (c)(1) is also so limited. The Department further urged the hearing officer to reject the presumption advocated by National that the drafters intended to limit section
 
 *200
 
 1861.03, subdivision (c)(1) to private passenger automobile policies as defined in section 660, subdivision (a).
 

 The Department’s attorney argued in relevant part: “The problem here is that given these different rules of construction, which one do we abide by. It would appear that there can be different arguments on the side of regulatory objective. It would seem that the general scheme and purpose of the initiative is to provide a greater degree of regulation in the private passenger au[t]omobile lines, [¶] However, on the other hand, it can be argued just as forcefully that there is really no reason to make such a distinction with regard to all of the various applications of the proposition. And, indeed, for the smaller businesses, the owner-operators of a single vehicle, that they should be afforded the same protections that . . . private individuals] driving their car to and from work should be afforded, and that there is no significant difference in those consumers as insurance consumers, [¶] ... . [¶] So the department, in considering this matter, has determined that the most reasonable policy decision that can be made with regard to the differences in interpretation . . . and ... the statutory ambiguity within Proposition 103 is that we should construe the statute to be of the most benefit to the most consumers. ... [¶] And that construction is also supported by another part of the initiative that provides that the act shall be li[b]erally construed and applied in order to fully promote its underlying purposes. . . .”
 

 The hearing officer adopted the rule of statutory construction advocated by the Department, and found that section 1861.03, subdivision (c)(1) retroactively applies to commercial motor vehicle policies in effect at the time the initiative was passed.
 

 Upon adopting the hearing officer’s proposed decision, the Commissioner ordered National to rescind any outstanding cancellation and nonrenewal notices and to “renew all policies unless valid grounds for cancellation or nonrenewal exist pursuant to the provisions of Section 1861.03[, subdivision] (c). . . .” The Commissioner further ordered National to renew, upon request, any policies which National had failed to renew after the passage of Proposition 103, for reasons other than those set forth in section 1861.03, subdivision (c)(1).
 

 B.
 
 Stay Order
 

 Prior to the effective date of the Commissioner’s decision, National filed a stay application in superior court. National contended that its probability of success on the merits was high, and that the impact of a stay order would be minimal. According to a declaration submitted by National’s counsel, an
 
 *201
 
 attorney for the Department had told National’s counsel on April 19, 1989, that National was the only insurer to have informed the Commissioner that it was withdrawing from the commercial motor vehicle market.
 

 In further support of National’s stay application, Leslie Bailer submitted a declaration stating that as of May 30, 1989, a stay order would only affect about 233 commercial insureds to whom National had sent nonrenewal notices. Bailer further attested that [“d]uring this seven-month period [following enactment of Proposition 103], only three of our former insureds have advised me or my staff that they objected to our nonrenewal. Even with respect to these three, I have no information that they ultimately were unable to obtain replacement coverage. In my opinion, our nonrenewals have elicited so very few responses because commercial motor vehicle coverage is readily available to insureds in California, [¶] . ...[¶].. . Further evidence of the availability of commercial motor vehicle insurance is reflected in [National’s] experience in the California marketplace for the last three years. In 1986 [National] had commercial motor vehicle premiums of $17,802,385 in California. In 1987 the premiums dropped to $8,227,297 and they dropped again in 1988 to $4,394,855. [National’s] commercial motor vehicle insureds declined from 2,463 in 1986, to 926 in 1987, to 418 in 1988. [¶] . . . This drop in [National’s] business resulted from the decisions of [National’s] insureds to take advantage of lower rates offered by competing insurance companies. Far from requiring renewals by [National] to obtain insurance, over half of [National’s] commercial motor vehicle insureds in each of the past two years have elected voluntarily not to renew their policies, even though [National] was willing to do so. [¶]... [National’s] share of the California market for commercial motor vehicle insurance is min[u]scule, as the effect of its withdrawal from the market necessarily is also. According to information provided to my staff by the California Insurance Department in Los Angeles, the total premiums for commercial motor vehicle insurance in California written by all companies in 1987 was $2,053,193,000. [National’s] previously stated premiums in 1987 were only 0.4% of this total amount.”
 

 The superior court granted National’s application for a stay, and the stay remains in effect pending the determination of this appeal. (Code Civ. Proc., § 1094.5, subd. (g).) The superior court further ordered National to notify its former insureds of the Commissioner’s decision, the pending litigation, and of the stay order. The superior court also required National to offer interim insurance coverage to its former insureds who had made reasonable but unsuccessful efforts to secure new insurance.
 

 C.
 
 Writ of Mandamus
 

 National successfully sought a writ of mandamus from a different superior court judge. (Code Civ. Proc., § 1094.5.)
 

 
 *202
 
 National presented no new evidence. In its petition, National asserted the Commissioner had erred as a matter of law in determining that the term “automobile insurance” as used in section 1861.03, subdivision (c)(1), applies to commercial motor vehicle insurance.
 
 [2]
 

 In support of its position, National contended the California Supreme Court had implicitly applied the definition of private passenger automobile insurance in section 660, subdivision (a) to the term “automobile insurance” in section 1861.03, subdivision (c)(1).
 
 (Calfarm, supra,
 
 48 Cal.3d at p. 826, fn. 19.) National quoted the following language and footnote from the Supreme Court’s opinion: “Before enactment of Proposition 103 insurers had an unfettered right to refuse to renew policies (see
 
 Greene
 
 v.
 
 Safeco Ins. Co.
 
 (1983) 140 Cal.App.3d 535, 538 [189 Cal.Rptr. 616]).”
 
 (Calfarm, supra,
 
 48 Cal.3d at p. 826.) The footnote states: “ ‘Cancellation,’ as opposed to ‘non-renewal,’ refers to termination of a policy before its expiration date. Insurers’ power to cancel policies was severely restricted by section 661 before enactment of Proposition 103. The only effect of Proposition 103 upon this section was to eliminate the 60-day grace period following issuance of a policy during which section 661 placed no limits on cancellation.”
 
 (Id.
 
 at p. 826, fn. 19.)
 

 National contended the significance of Calfarm's reference to section 661 is that section 661 does not apply to commercial motor vehicle insurance; it applies only to private passenger motor vehicle policies described in section 660, subdivision (a). Section 661 limits the instances when an insurer may lawfully cancel a private passenger automobile policy described in section 660, subdivision (a). National asserted that since
 
 Calfarm
 
 failed to discuss the impact which retroactive application of section 1861.03, subdivision (c)(1) would have on the separate statutory scheme limiting the insurers’ right to cancel commercial motor vehicle policies (see, e.g., §§ 670, 675.5, 676.2), the Supreme Court implicitly assumed that section 1861.03, subdivision (c)(1) applies only to private passenger automobile policies.
 

 National further pointed out that by interpreting the term “automobile insurance” in section 1861.03, subdivision (c)(1) according to the description in section 660, subdivision (a), the court would leave intact the existing statutory scheme governing cancellation and nonrenewal of commercial motor vehicle insurance. National asserted in its brief below: “Under preexisting law, insurance was divided into three categories for purposes of cancellation and nonrenewal restrictions. One category was automobile insurance, as defined in section 660. This was subject to its own set of
 
 *203
 
 standards for cancellation and nonrenewal.
 
 See . .
 
 . [§§] 661 (reasons for cancellation; . . . 662, 666 (notice of cancellation and of reasons); . . . 663 (nonrenewal). A second category was commercial insurance described in section 675.5.[ ] This category too had its own standards for cancellation and nonrenewal.
 
 See . .
 
 . [§§] 676.2 (reasons for cancellation); . . . 677.2 (notice of cancellation); . . . 678.1 (nonrenewal). The third category was noncommercial forms of liability or property insurance as defined in section 675, which had yet a third set of restrictions for cancellation and nonrenewal.
 
 See
 
 ... § 676 (cancellation) . . . .”
 

 The superior court found National’s petition to be supported by good cause and issued an alternative writ requiring the Commissioner to either set aside her decision or show why the writ of mandamus should not be issued.
 

 The Commissioner filed a return to the alternative writ, which stated in part: “[Commissioner] submits that while in some respects the issue is a close one involving some ambiguity, an examination of all pertinent factors leads to the conclusion that the weight of the evidence and better view is that [section] 1861.03, [subdivision] (c) of Proposition] 103 applies to both private passenger and commercial automobile liability policies.” The Commissioner contended that her liberal construction of the term “automobile insurance” in section 1861.03, subdivision (c)(1) furthered the objective of the initiative, which is stated in section 2 of the initiative as follows: “The purpose of this chapter is to protect consumers from arbitrary insurance rates and practices, to encourage a competitive insurance marketplace, to provide for an accountable Insurance Commissioner, and to ensure that insurance is fair, available and affordable to all Californians.” The Commissioner also asserted that “no reason suggests itself as to why these problems should be deemed peculiar to private passenger automobile insureds, and not to commercial automobile insureds.”
 

 In addition, the Commissioner pointed out the record contains evidence that commercial motor vehicle insureds face difficulty obtaining affordable coverage. First, National’s own witnesses testified that commercial motor vehicle insurance premiums are higher than those for private passenger automobile policies. And second, the fact that commercial motor vehicle insurance is available through the California Automobile Assigned Risk Plan suggests there are affordability and availability problems.
 

 Following a hearing, the superior court applied the independent judgment standard of review (§ 1858.6) and found that section 1861.03, subdivision (c)(1) applies only to private passenger automobile policies as defined in section 660, subdivision (a).
 

 
 *204
 
 Unlike the hearing officer, the superior court applied the rule of construction urged by National in order to interpret the term “automobile insurance” pursuant to section 660, subdivision (a). The court reasoned that this rule of construction provided a result which was more consistent with the separate preexisting statutory scheme that regulated commercial motor vehicle insurance as a form of commercial rather than automobile insurance. The court concluded that since section 1861.02, subdivision (a) defined the term “automobile insurance” according to section 660, subdivision (a), the drafters of the initiative “understood that section 1861.03[, subdivision] (c) applied only to private passenger automobile policies.”
 

 The superior court also agreed with National’s interpretation of the
 
 Calfarrn
 
 opinion. The court stated that the California Supreme Court “implicitly recognized in
 
 Calfarm
 
 . . . that section 1861.03[, subdivision] (c) affected only private passenger automobile policies.”
 

 In addition to these legal conclusions, the superior court made factual findings in National’s favor. The court determined that the undisputed evidence supported National’s contention that the term “automobile insurance” excludes commercial motor vehicle insurance. In particular, the superior court found that the model act on cancellations and renewals drafted by the National Association of Insurance Commissioners suggests that the term “automobile insurance” is understood in the industry to refer to private passenger automobile policies. The court also found that application of section 1861.03, subdivision (c)(1) to commercial motor vehicle insurance would have the undesirable effect of increasing rather than decreasing the cost of premiums.
 

 Based on these conclusions of law and factual findings, the superior court entered judgment for National and issued a peremptory writ of mandamus. The judgment ordered the Commissioner to “set aside your decision of April 21, 1989, . . . and to reconsider your action in the light of this court’s statement of decision, and to take any further action specially enjoined on you by law; but nothing in this judgment or in that writ shall limit or control in any way the discretion legally vested in you.”
 

 The Commissioner filed a timely appeal from the judgment.
 

 Standard of Review
 

 When, as here, the independent standard of review applies in the trial court (§ 1858.6), the trial court must not only examine the administrative record for errors of law, but it must also exercise its independent judgment upon the evidence. (See Code Civ. Proc., § 1094.5, subd. (c).) On appeal in
 
 *205
 
 such a case, the appellate court independently determines the legal issues but can only overturn the trial court’s factual findings if the evidence received by the trial court, including the administrative record, is insufficient as a matter of law to sustain the findings.
 
 (Whaler’s Village Club
 
 v.
 
 California Coastal Com.
 
 (1985) 173 Cal.App.3d 240, 251 [220 Cal.Rptr. 2].)
 

 Discussion
 

 The question of law before this court is whether the term “automobile insurance” in section 1861.03, subdivision (c)(1), is limited to private passenger automobile insurance as described in section 660, subdivision (a). Preliminarily, we note that if commercial motor vehicle insurance does fall within the scope of section 1861.03, subdivision (c)(1), the insurers’ preProposition 103 discretion to refuse to
 
 renew
 
 commercial motor vehicle insurance policies will be dramatically restrained. However, because the Legislature had previously limited the insurers’ discretion to
 
 cancel
 
 commercial motor vehicle insurance policies (see § 676.2),
 
 [3]
 
 it appears the impact in
 
 *206
 
 this regard would be minimal. (Cf.
 
 Calfarm, supra,
 
 48 Cal.3d at p. 826 (which discusses the impact of § 1861.03, subd. (c)(1) with respect to private passenger automobile insurance).)
 

 By its terms, Proposition 103 applies “to all insurance on risks or on operations in this state, except those listed in Section 1851.” (§ 1861.13.) Since neither private passenger automobile insurance nor commercial motor vehicle insurance is listed in section 1851,
 
 [4]
 
 neither is exempted from the scope of the initiative pursuant to section 1861.13.
 

 The Commissioner contends that the use of the limiting clause “automobile insurance policy, as described in subdivision (a) of Section 660” in section 1861.02, subdivision (a) precludes us from presuming the same limitation applies in section 1861.03, subdivision (c)(1). (See, e.g.,
 
 Shaw
 
 v.
 
 McMahon
 
 (1987) 197 Cal.App.3d 417, 425 [243 Cal.Rptr. 26].)
 

 While the administrative agency’s construction of a statute which the agency is charged with enforcing will ordinarily be given great respect by the courts, it will not be followed if clearly erroneous
 
 (Judson Steel Corp.
 
 v.
 
 Workers’ Comp. Appeals Bd.
 
 (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564]). We are required to construe the language of section 1861.03, subdivision (c)(1) according to its ordinary and usual meaning
 
 (Shaw
 
 v.
 
 McMahon, supra,
 
 197 Cal.App.3d at p. 424), and in a practical and commonsense manner which achieves a result consistent with its purpose and other legislative enactments.
 
 (Ibid.; Fletcher
 
 v.
 
 Porter
 
 (1962) 203 Cal.App.2d 313, 316 [21 Cal.Rptr. 452].)
 

 The weight of the undisputed evidence strongly supports the trial court’s factual finding that “automobile insurance” has come to be understood, at least by the Legislature and within the insurance industry, to refer to private passenger automobile policies as described in section 660, subdivision (a). We find it significant that the Legislature has separately classified
 
 *207
 
 commercial motor vehicle insurance as a form of commercial insurance rather than as a form of automobile insurance. (Cf. and contra § 660 and § 675.5, subd. (d)(4).) Although automobiles may be insured under either type of policy, commercial motor vehicle policies are not limited to automobiles. Commercial motor vehicle policies also cover a diverse range of vehicles including trucks, buses, limousines, ambulances, and logging and sand and gravel operations. In drafting the legislative scheme limiting the cancellation and nonrenewal rights of insurers, the Legislature elected to treat the two lines of coverage differently.
 

 When it is possible to do so, the courts must construe a statute so as not to conflict with the other legislative enactments. (See
 
 Fletcher
 
 v.
 
 Porter, supra,
 
 203 Cal.App.2d at p. 316.) By limiting section 1861.03, subdivision (c)(1) to private passenger automobile coverage, we avoid the disfavored act of repealing by implication other statutory enactments, such as section 676.2, subdivision (b)(7) (which permits insurers to cancel a commercial policy when the Commissioner determines continuation of coverage would threaten the insurer’s solvency), or section 676.2, subdivision (b) (which establishes a 60-day grace period during which the insurer may cancel a policy). When it is neither clear by declaration nor necessary by implication that statutory provisions must be repealed, the courts should not presume that the electorate intended to repeal solely by implication the rights that were previously held by insurers. (See
 
 California State Auto. Assn.
 
 v.
 
 Franchise Tax Bd.
 
 (1987) 191 Cal.App.3d 1253, 1261 [237 Cal.Rptr. 44];
 
 Myers
 
 v.
 
 King
 
 (1969) 272 Cal.App.2d 571, 579 [77 Cal.Rptr. 625].) This principle applies whether the statute was enacted by the Legislature or through the initiative process. In either case, the “adopting body is presumed to be aware of existing laws . . . .”
 
 (In re Lance W.
 
 (1985) 37 Cal.3d 873, 890, fn. 11 [210 Cal.Rptr. 631, 694 P.2d 744].)
 

 The Legislature in its wisdom devised the existing statutory scheme which on the one hand enables insurers to refuse to renew commercial motor vehicle policies without serious constraints, but which on the other hand severely limits their right to cancel such policies (see § 676.2). If the drafters of Proposition 103 intended to amend or repeal these statutory provisions, they should have clearly stated their intent. While the practical effect section 1861.03, subdivision (c) would have on section 676.2 may not be that severe,
 
 [5]
 
 it would be inappropriate for the courts to presume the initiative amended or repealed section 676.2 when it is not necessary to do so.
 

 
 *208
 
 It is clear that section 1 of the initiative refers to automobile insurance as described in section 660, subdivision (a), even if the limitation is not expressly stated. In our view, the fact that the limitation expressly appears in section 1861.02, subdivision (a), supports rather than defeats National’s construction. We agree with National that “when a word is used in a particular sense in one part of a statute, it is intended to have the same meaning if it appears in another part of the same statute. [Citations.]”
 
 (People
 
 v.
 
 Dillon
 
 (1983) 34 Cal.3d 441, 468 [194 Cal.Rptr. 390, 668 P.2d 697];
 
 Stillwell
 
 v.
 
 State Bar
 
 (1946) 29 Cal.2d 119, 123 [173 P.2d 313], See also
 
 Santa Clara County Dist. Attorney Investigators Assn.
 
 v.
 
 County of Santa Clara
 
 (1975) 51 Cal.App.3d 255, 263, fn. 4 [124 Cal.Rptr. 115] (“Where the same word (or root variations thereof is used in the same statute, it will not be used in two different senses.”); and
 
 Corey
 
 v.
 
 Knight
 
 (1957) 150 Cal.App.2d 671, 680 [310 P.2d 673] (“[A] word or clause in a statute is presumed to have the same meaning throughout. [Citations.]”).)
 

 We further note that in
 
 Calfarm,
 
 supra, 48 Cal.3d 805, the unanimous opinion of the Supreme Court discussed the impact of section 1861.03, subdivision (c)(1) exclusively in terms of private passenger automobile insurance.
 
 (Id.
 
 at p. 826, fn. 19.) Although this footnote is not dispositive of the issue, we think it tends to support National’s position that section 1861.03, subdivision (c)(l)’s cancellation and nonrenewal restrictions apply only to private passenger automobile policies.
 

 We hold that section 1861.03, subdivision (c)(1) applies only to private passenger automobile policies as described in section 660, subdivision (a).
 

 Disposition
 

 We affirm the judgment.
 

 Spencer, P J., and Devich, J., concurred.
 

 [1]
 

 Unless otherwise indicated, all future statutory references are to the Insurance Code.
 

 [2]
 

 The Association of California Insurance Companies, the Alliance of American Insurers, and the National Association of Independent Insurers filed an amicus brief and declarations in support of National’s petition for writ of mandamus.
 

 [3]
 

 Section 1861.03, subdivision (c)(1) addresses two distinct events: cancellation and nonrenewal of “automobile insurance.” “ ‘Cancellation,’ as opposed to ‘non-renewal,’ refers to termination of a policy before its expiration date.”
 
 (Calfarm, supra,
 
 48 Cal.3d at p. 826, fn. 19.) “Nonrenewal” occurs when the insurer notifies its insured of its refusal to renew a policy that is due to expire, and the policy thereafter lapses following the expiration date. (See, e.g., § 660, subd. (h).)
 

 Section 676.2, subdivisions (a) and (b) provide: “(a) This section applies only to policies of commercial insurance which are subject to Section 675.5. [¶] (b) After a policy has been in effect for more than 60 days, or if the policy is a renewal, effective immediately, no notice of cancellation shall be effective unless it complies with Section 677.2 and it is based on the occurrence, after the effective date of the policy, of one or more of the following: [¶] (1) Nonpayment of premium, including payment due on a prior policy issued by the insurer and due during the current policy term covering the same risks, [¶] (2) A judgment by a court or an administrative tribunal that the named insured has violated any law of this state or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against. [¶] (3) Discovery of fraud or material misrepresentation by either of the following: [¶] (A) The insured or his or her representative in obtaining the insurance. [¶] (B) The named insured or his or her representative in pursuing a claim under the policy, [¶] (4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the named insured or his or her representative, which materially increase any of the risks insured against. [¶] (5) Failure by the named insured or his or her representative to implement reasonable loss control requirements which were agreed to by the insured as a condition of policy issuance or which were conditions precedent to the use by the insurer of a particular rate or rating plan, if the failure materially increases any of the risks insured against. [¶] (6) A determination by the commissioner that the loss of, or changes in, an insurer’s reinsurance covering all or part of the risk would threaten the financial integrity or solvency of the insurer. A certification made under penalty of perjury to the commissioner by an officer of the insurer of the loss of, or change in, reinsurance and that the loss or change will threaten the financial integrity or solvency of the insurer if the cancellation of the policy is not permitted shall constitute such a determination unless disapproved by the commissioner within 30 days of the filing. There shall be no
 
 *206
 
 extensions to this 30-day period. [5] (7) A determination by the commissioner that a continuation of the policy coverage would place the insurer in violation of the laws of this state or the state of its domicile or that the continuation of coverage would threaten the solvency of the insurer. [][] (8) A change by the named insured or his or her representative in the activities or property of the commercial or industrial enterprise which results in a material added risk, a materially increased risk or a materially changed risk, unless the added, increased, or changed risk is included in the policy.”
 

 [4]
 

 “[S]ection 1851 lists reinsurance, life insurance, title insurance, certain types of marine insurance, disability insurance, workers’ compensation insurance, mortgage insurance, and insurance transacted by county mutual fire insurers." (Calfarm., supra, 48 Cal.3d at p. 812, fn. 1.) In 1990, the Legislature enacted sections 1861.135 and 1861.137, which further limit the applicability of Proposition 103 with respect to surety insurance and credit insurance. Those sections are not applicable here.
 

 [5]
 

 As the Commissioner points out, insurers would still be permitted to issue a binder, rather than a policy, in order to avail itself of the right to inspect insureds’ operations and, if necessary, to cancel coverage during the first 60 days of the binder period. Also, insurers would be free to cancel coverage beyond the 60 days if they can show nonpayment of
 
 *208
 
 premium, fraud or material misrepresentation affecting the policy or insured, or a substantial increase in the hazard insured against (§ 1861.03, subd. (c)(1)).