[No. C019541. Third Dist. Nov. 1, 1995.]

LEON SCHIMMEL et al., Plaintiffs and Appellants, v.
NORCAL MUTUAL INSURANCE COMPANY et al., Defendants and
Respondents.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part I of the Discussion.

## COUNSEL

Callahan & Deacon, Gary B. Callahan and Judith Clark-Martin for Plaintiffs and Appellants.

Hinshaw, Winkler, Draa, Marsh & Still, Tyler G. Draa, Barry C. Marsh, Wilke, Fleury, Hoffelt, Gould & Birney, Scott Gassaway and Matthew J. Smith for Defendants and Respondents.

## OPINION

**NICHOLSON, J.**—There is currently no tort liability in California for refusal to renew a professional liability insurance policy for reasons in violation of public policy. Whether such liability should be imposed is a matter for the people of California to decide, either by initiative or through the Legislature. We may not legislate on the subject in their stead.

### PROCEDURE

NORCAL Mutual Insurance Company insured Drs. Leon Schimmel and Charles Stice and their professional corporation (collectively, Schimmel) in their practice of medicine. Concluding the practice presented unacceptable risks, however, NORCAL terminated Schimmel's insurance at the end of a

policy term. Schimmel sued NORCAL and Northern California Physician's Council (NORCAP), a physician's group that provided reviews concerning insurance for NORCAL, for "bad faith and unfair dealing." The parties appeared for trial. However, following an extended offer of proof by Schimmel at trial, the trial court ruled Schimmel had no cause of action and entered judgment in favor of NORCAL and NORCAP because the termination of insurance was a nonrenewal at the end of a policy term.

Schimmel appeals. Since Schimmel's case against NORCAP falls with his case against NORCAL, we will refer only to NORCAL.

## FACTS

The parties have spent years in litigation concerning this controversy. Consequently, the facts here pertinent are aged. The NORCAL policy provided coverage from the "retroactive date," November 1, 1975, to 12:01 a.m. on the expiration or cancellation date of the policy. Although they make no attempt to support the assertion by reference to the record, the parties agree the policy expired by its terms on January 1, 1987. On November 19, 1986, NORCAL sent Schimmel a notice it was terminating Schimmel's professional liability insurance. The notice stated: "This letter will serve to confirm that your professional liability insurance policy will be canceled effective January 1, 1987 at 12:01 A.M. Pacific Standard Time. This action is being taken due to the following reason: [¶] The scope of your practice presents an unacceptable risk to NORCAL." The effective date and time of the cancellation coincided with the end of the policy term.

Schimmel exercised his contractual right to appeal the decision, and NORCAL extended Schimmel's policy to February 23, 1987. When NORCAL, after review, again concluded it would no longer cover Schimmel, it sent a notice, on January 15, 1987, confirming his policy would expire on February 23, 1987.

## DISCUSSION

### I*

*Characterization of the Termination of Schimmel's Insurance*

*See footnote, *ante*, page 1282.

## II

### *Tortious Nonrenewal*

Schimmel seeks to create a new tort: tortious nonrenewal of a professional liability insurance contract in violation of public policy. As Schimmel apparently concedes, no jurisdiction recognizes such a tort.

In his extended offer of proof, Schimmel asserted NORCAL terminated his insurance based on two reasons which he claims violate public policy: (1) Schimmel used nurse midwives and (2) Schimmel primarily treated unmarried women of Hispanic and East Indian descent. Schimmel also claims his insurance was not renewed because he testified as an expert witness against NORCAL's insureds, but the portion of his offer of proof to which he cites on this issue does not say he ever testified as an expert.

The liability insurance at issue here was a term policy. In the absence of statutory provisions to the contrary, an insurer may refuse to renew a term policy " *'for any reason, or for no reason at all.'* " (*Greene* v. *Safeco Ins. Co.* (1983) 140 Cal.App.3d 535, 538 [189 Cal.Rptr. 616], quoting 13A Appleman, Insurance Law and Practice (1976) § 7642, pp. 409-410, italics in original; see also *Travelers Ins. Co.* v. *Lesher* (1986) 187 Cal.App.3d 169, 194 [231 Cal.Rptr. 791].) "To require liability coverage against the judgment of the contracting parties would constitute an unprecedented judicial interference into private contractual and economic arrangements." (*Greene, supra,* at p. 539.) The only exception to this rule is automobile insurance, as to which the people of California, by passage of Proposition 103, imposed a duty to renew. (See *Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 826 [258 Cal.Rptr. 161, 771 P.2d 1247].)

Schimmel candidly cites cases from other jurisdictions that also refuse to impose a duty to renew (see, e.g., *Armstrong* v. *Safeco Ins. Co.* (1988) 111 Wn.2d 784 [765 P.2d 276]), but he argues we should deviate from the California precedent and that of other states because those cases dealt with a duty based on a contract, while Schimmel seeks to impose a duty based on the violation of public policy. Nonetheless, if an insurer can refuse to renew " *'for any reason, or for no reason at all'* " (*Greene* v. *Safeco Ins. Co., supra,* 140 Cal.App.3d at p. 538, italics in original), there can be no duty to renew. Without a duty, there can be no tort. (See *Moore* v. *Regents of University of California* (1990) 51 Cal.3d 120, 135, fn. 16 [271 Cal.Rptr. 146, 793 P.2d 479].)

Schimmel tries to construct a duty by citing *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]. He claims insurance contracts are analogous to employment contracts.

Even if Schimmel were correct that insurance and employment contracts are analogous, *Tameny* would not help him because it involved the termination of an at-will employee—one not under a contract of employment for a fixed term. In other words, Tameny's contract would have remained in force indefinitely if the employer had not terminated him (and Tameny did not quit). (27 Cal.3d at p. 172.) Here, on the other hand, the contract was self-terminating as would be a fixed-term employment contract. Under a fixed-term employment contract, the "employment is terminated by . . . [e]xpiration of its appointed term." (Lab. Code, § 2920, subd. (a).) We are unaware of any case, and Schimmel presents none, in which an employer was held liable in tort for refusing to renew an employment contract that had expired by its own terms. Accordingly, the employment context and *Tameny* provide no support for imposing tort liability for nonrenewal of an insurance policy.

We conclude there is no duty to renew a professional liability insurance policy. If it is in the interest of the public to impose a duty to renew an insurance policy, the people of California, by initiative or through the Legislature, can create that duty, as they did with respect to automobile insurance policies when they passed Proposition 103.

### DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Sims, J., concurred.