[No. B241137. Second Dist., Div. Four. Aug. 16, 2012.]

TOUCHSTONE TELEVISION PRODUCTIONS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
NICOLLETTE SHERIDAN et al., Real Parties in Interest.

**COUNSEL**

Mitchell Silberberg & Knupp, Aaron M. Wais and Adam Levin for Petitioner.

No appearance for Respondent.

Baute Crochetiere & Wang, Mark D. Baute and David P. Crochetiere for Real
Parties in Interest.

OPINION

WILLHITE, J.—

## INTRODUCTION

Touchstone Television Productions (Touchstone) hired actress Nicollette
Sheridan (Sheridan) to appear in the first season of the television series
*Desperate Housewives*. The agreement gave Touchstone the exclusive option
to renew Sheridan's services on an annual basis for an additional six seasons.
Touchstone renewed Sheridan's services up to and including season 5. During
season 5, Touchstone informed Sheridan it would not renew her contract for
season 6.

Insofar as is relevant to this writ proceeding, Sheridan sued Touchstone for
wrongful termination in violation of public policy. Sheridan alleged that
Touchstone had fired her because she had complained about a battery
allegedly committed upon her by *Desperate Housewives*'s creator Marc
Cherry (Cherry). The jury deadlocked on this claim and the trial court
declared a mistrial. Touchstone moved for a directed verdict, contending that
it had not terminated Sheridan, but rather had simply not renewed her
contract for an additional season. The trial court denied the motion.

Touchstone petitioned this court for extraordinary relief. We stayed the
pending retrial and issued an alternative writ of mandate. Having reviewed
the parties' pleadings and heard oral argument, we conclude that the trial
court erred in denying Touchstone's motion for a directed verdict. A cause of
action for wrongful termination in violation of public policy does not lie if an
employer decides simply not to exercise an option to renew a contract. In that
instance, there is no termination of employment but, instead, an expiration of
a fixed-term contract. (*Daly v. Exxon Corp.* (1997) 55 Cal.App.4th 39 [63
Cal.Rptr.2d 727] (*Daly*).) To hold otherwise would require the creation of a
new tort for nonrenewal of a fixed-term employment contract in violation of
public policy. We decline to do so. However, we conclude also that Sheridan
should be permitted to file an amended complaint alleging a cause of action
under Labor Code section 6310 (section 6310) that Touchstone retaliated
against her for complaining about unsafe working conditions (e.g., Cherry's
conduct) by deciding not to exercise its option to renew her contract. (But see
fns. 5 & 6, *post.*)

## FACTUAL AND PROCEDURAL BACKGROUND

In 2004, Touchstone hired Sheridan, through her loan-out company Starlike Enterprises, Inc. (Starlike), to play the character of Edie Britt in the television series *Desperate Housewives*. Touchstone's agreement with Sheridan was for the series's initial season but it gave Touchstone the exclusive option to renew her services on an annual basis for up to an additional six seasons. The agreement provided that if Touchstone exercised its option, it was obligated to pay Sheridan for that particular year but was *not* obligated to use her services. Touchstone exercised its option and renewed its agreement with Sheridan in 2005, 2006, 2007, and 2008 for seasons 2, 3, 4 and 5.

During the September 24, 2008 filming of a season 5 episode of *Desperate Housewives*, an incident occurred between Sheridan and Cherry, the series's creator. Sheridan claims that Cherry hit her. Thereafter, Sheridan complained to Touchstone about Cherry's (alleged) battery.

In February 2009, while the production of season 5 was ongoing, Touchstone informed Sheridan that it had decided not to exercise its option for season 6. Touchstone explained that during season 5 Sheridan's character (Edie Britt) would be killed in a car accident. As required by contract, Touchstone paid Sheridan $4.2 million for her services for the entirety of season 5 even though she did not appear in every episode of that season. After the February 2009 meeting, Sheridan appeared in three more episodes of season 5 of *Desperate Housewives*; Sheridan engaged, as obligated by her contract, in publicity for the series; and Sheridan's profit-sharing agreement with Touchstone vested. As televised, the season 5 story arc included Edie Britt's death during a car accident and her subsequent return as a ghost.

In April 2010, Sheridan[1] sued Touchstone and Cherry.[2] Essentially, Sheridan alleged that Cherry had committed a battery upon her in September 2008, and that she had been fired in February 2009 in retaliation for complaining about Cherry's conduct. Sheridan sought compensatory damages in excess of $20 million and punitive damages.

In February 2012, the matter went to trial on three causes of action: wrongful termination in violation of public policy, breach of the implied covenant of good faith and fair dealing, and battery. During trial, the court granted a directed verdict for Cherry and Touchstone on the battery cause of

---

[1] The other plaintiff was Sheridan's loan-out company, Starlike. There appear to be no separate issues affecting Starlike's ability to recover. That is, Starlike's rights are derivative of Sheridan's rights.

[2] Sheridan initially sued other defendants but by the time the matter went to trial Touchstone and Cherry were the sole defendants.

action[3] and Sheridan voluntarily dismissed the cause of action for breach of the implied covenant. The jury deadlocked on the wrongful termination cause of action and the trial court declared a mistrial.

Touchstone moved for a directed verdict on the wrongful termination claim. (Code Civ. Proc., § 630, subd. (f).) Touchstone raised a theory that it had unsuccessfully advanced three times earlier in the proceeding: Sheridan's employment had not been terminated; instead, Touchstone had simply decided not to renew her contract.[4] Relying upon *Daly, supra,* 55 Cal.App.4th 39, Touchstone argued that its decision made during season 5 not to exercise its option to hire Sheridan for season 6 of *Desperate Housewives* could not support a claim for wrongful termination in violation of public policy. The trial court denied the motion and set the matter for retrial.

Touchstone filed a petition in this court for extraordinary relief. We ordered the retrial stayed and issued an alternative writ of mandate, directing the trial court either to grant Touchstone's motion for directed verdict and to permit Sheridan to amend the complaint to state a cause of action under section 6310, subdivision (b), or to show cause why a writ of mandate should not issue compelling it to enter those orders.

Thereafter, Sheridan moved the trial court for leave to file an amended complaint to include a cause of action under section 6310. The trial court denied the motion.

The parties have appeared in this court and presented oral argument. We grant a writ ordering the trial court to enter a directed verdict in Touchstone's favor on the wrongful termination cause of action and to permit Sheridan to file an amended complaint alleging a cause of action under section 6310, subdivision (b).

## DISCUSSION

■ Decisional law does not allow a plaintiff to sue for wrongful termination in violation of public policy based upon an employer's refusal to renew an employment contract. *Daly, supra,* 55 Cal.App.4th 39 is the leading case on this point. There, the defendant hired the plaintiff to provide emergency

---

[3] The trial court concluded that the battery claim fell within the exclusivity provisions of the workers' compensation system and that Sheridan had failed to establish the exception to exclusivity that Cherry had intended to injure her and she had suffered injury as a result of Cherry's action.

[4] Touchstone had raised this claim in a motion for judgment on the pleadings, a nonsuit motion made following Sheridan's opening statement, and a nonsuit motion made following the conclusion of Sheridan's case-in-chief.

medical services at one of its facilities. The employment contract was for a one-year term but provided that the defendant could renew the contract at its option. The defendant twice renewed the contract. During the plaintiff's third year of employment, she complained about various safety violations. Several months later, the defendant informed the plaintiff that it would not renew her contract. The plaintiff continued to work until the expiration date of her contract.

The plaintiff sued for wrongful termination, alleging that she had been fired in violation of public policy as retaliation for her complaints about the safety violations. The trial court sustained a demurrer without leave to amend.

The appellate court found that as a matter of law the plaintiff had failed to allege a viable claim for wrongful termination in violation of public policy "because she was not fired, discharged, or terminated. . . . The employment contract was for a fixed term and . . . [u]nder a fixed-term contract, the 'employment is terminated by . . . [¶] . . . [e]xpiration of its appointed term.' ([Lab. Code,] § 2920, subd. (a).)" (*Daly, supra,* 55 Cal.App.4th at p. 45; accord, *Motevalli v. Los Angeles Unified School Dist.* (2004) 122 Cal.App.4th 97, 102 [18 Cal.Rptr.3d 562] ["[N]o cause of action exists for tortious nonrenewal of an employment contract in violation of public policy."]; *Wells v. Board of Trustees of California State University* (N.D.Cal 2005) 393 F.Supp.2d 990, 997 ["In California, an employee whose fixed-term contract is not renewed cannot state a claim for wrongful termination in violation of public policy."].) *Daly* explained that the plaintiff's "use of the term 'wrongful termination' [was] a misnomer [because] an employee may not sue for tort damages where the employment contract is for a fixed term and expires." (*Daly, supra,* 55 Cal.App.4th at p. 45, citing *Tollefson v. Roman Catholic Bishop* (1990) 219 Cal.App.3d 843, 854 [268 Cal.Rptr. 550]; see Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2011) ¶ 5:27, p. 5-4 (rev. # 1, 2009)) ["No *Tameny* claim based on refusal to renew employment contract . . . ."].)

■ However, *Daly* held that the plaintiff did not lack a remedy: she could sue under section 6310, subdivision (b) which permits "an action for damages if the employee is discharged, threatened with discharge, or discriminated against by his or her employer because of the employee's complaints about unsafe work conditions. [Citations.] Here, it is alleged that [the defendant] discriminated against [the plaintiff] by not renewing her employment con-tract. *To prevail on the claim, she must prove that, but for her complaints about unsafe work conditions, [the defendant] would have renewed the employment contract. Damages, however, are limited to 'lost wages and work*

*benefits caused by the acts of the employer.'* (§ 6310, subd. (b.).)"[5] (*Daly, supra,* 55 Cal.App.4th at p. 44, italics added.)

█ By a parity of reasoning, the trial court erred when it denied Touchstone's motion for a directed verdict. Sheridan cannot pursue a cause of action for wrongful termination in violation of public policy because, contrary to what she claims, she was not fired, discharged or terminated. Instead, Touchstone chose only not to exercise its option to renew her contract for the next season. She continued to work through season 5 and was compensated as required by contract. That Touchstone's decision not to renew her contract for an additional season *might* have been influenced by her complaints about an unsafe working condition (e.g., Cherry's purported battery) does not change our conclusion in light of the principle that a decision not to renew a contract set to expire is not actionable in tort. (*Daly, supra,* 55 Cal.App.4th 39; see *Tollefson v. Roman Catholic Bishop, supra,* 219 Cal.App.3d at pp. 853–855.) In this case, Sheridan's remedy is to amend her complaint to allege a cause of action under section 6310, subdivision (b).[6] We direct the trial court to permit Sheridan to file such an amendment.

Sheridan's contrary arguments are not persuasive.

First, she claims that Touchstone has not established the predicates for extraordinary relief. This claim need not detain us. Our issuance of an alternative writ constitutes a determination that the remedy at law is inadequate. (*Hoversten v. Superior Court* (1999) 74 Cal.App.4th 636, 644 [88 Cal.Rptr.2d 197].)

Second, she urges that *Daly* does not apply when the employee is fired before the contract period expires. Sheridan is correct on the law but wrong on the facts. *Daly* noted: "Had [the defendant] fired, discharged, or terminated [the plaintiff] *before the contract expired* because she complained about unsafe working conditions, she could have sued for wrongful discharge in addition to statutory damages." (*Daly, supra,* 55 Cal.App.4th at p. 45, italics added.) *Here, Sheridan was not fired from season 5 before that season ended.*

---

[5] *Muller v. Automobile Club of So. California* (1998) 61 Cal.App.4th 431 [71 Cal.Rptr.2d 573] suggests that a section 6310 claim requires that the workplace "actually [be] unsafe within the meaning of Labor Code sections 6310 and 6402." (*Muller,* at p. 452.) On the other hand, *Cabesuela v. Browning-Ferris Industries of California, Inc.* (1998) 68 Cal.App.4th 101 [80 Cal.Rptr.2d 60] found it sufficient if the employee makes "a good faith complaint about working conditions which [s]he believes to be unsafe." (*Id.* at p. 109.) We need not resolve that conflict in this writ proceeding.

[6] At oral argument, Touchstone indicated that it did not oppose giving Sheridan an opportunity to file an amended complaint, but that it would challenge such a pleading in the trial court. Whether the facts of this case support a cause of action under section 6310, subdivision (b) is for the trial court to decide in the first instance.

Instead, during season 5 Touchstone informed her that it had decided not to exercise its option to hire her for season 6. After that decision was made, she continued to work during season 5. She filmed three more episodes of *Desperate Housewives* and did publicity for the series. She was paid for the entire season and her profit-sharing program vested. In other words, Sheridan and Touchstone performed their reciprocal contractual obligations for season 5. Because Sheridan was not dismissed but permitted to serve out the full term of her contract for season 5, her argument that she was fired from season 5 lacks merit.

Next, based upon a selective presentation of the trial evidence, Sheridan argues at length that Touchstone decided not to renew her contract in retaliation for her lodging a complaint about Cherry's alleged battery and that Touchstone's contrary explanations (creative, financial, and performance) are pretextual. The argument is irrelevant in this writ proceeding. Whether Touchstone decided not to exercise its option to renew her contract because she complained about Cherry or for other reasons is an issue to be resolved first in the trial court in the context of litigating a section 6310 claim.

Lastly, Sheridan urges that Touchstone's decision not to renew her contract before the current term expired is analogous to an employer's decision to terminate an at-will employee in violation of public policy. She relies upon the principle that while an at-will employee (an individual who is not working pursuant to a fixed-term employment contract) can be terminated for no reason or for an arbitrary or irrational reason, the employee cannot be terminated for a reason that contravenes fundamental public policy. In the latter situation, the employee can sue for wrongful termination in violation of public policy (*Silo v. CHW Medical Foundation* (2002) 27 Cal.4th 1097, 1104 [119 Cal.Rptr.2d 698, 45 P.3d 1162]; *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 172 [164 Cal.Rptr. 839, 610 P.2d 1330]) because the employee's contract would have remained in force indefinitely absent the employer's termination (or the employee's resignation). (*Schimmel v. NORCAL Mutual Ins. Co.* (1995) 39 Cal.App.4th 1282, 1286 [46 Cal.Rptr.2d 401].)

Sheridan's analogy is not persuasive. As explained above, Touchstone did not terminate Sheridan's employment. Instead, her employment expired at the end of season 5 because Touchstone decided not to exercise its contractual option to hire her for another season. Stated another way, this case does not involve a decision to terminate an employee but, instead, a decision not to rehire an employee whose contract would expire on its own terms. "We are unaware of any case, and [Sheridan] presents none, in which an employer was held liable in tort for refusing to renew an employment contract that had expired by its own terms." (*Schimmel v. NORCAL Mutual Ins. Co., supra,* 39

Cal.App.4th at p. 1286.) Consequently, Sheridan's remedy "is limited to section 6310, subdivision (b). Where an employer discriminates against the employee and retaliates by not renewing the employment contract, the employee may sue for statutory damages. [Citations.]" (*Daly, supra,* 55 Cal.App.4th at p. 46.) To the extent that Sheridan is asking us to create a new cause of action for tortious nonrenewal of an employment contract in violation of public policy, we decline to do so. (*Motevalli v. Los Angeles Unified School Dist., supra,* 122 Cal.App.4th at p. 113; *Daly, supra,* 55 Cal.App.4th at pp. 45–46.)

## DISPOSITION

Let a peremptory writ of mandate issue compelling respondent court (1) to vacate its April 18, 2012 order denying Touchstone's motion for a directed verdict on Sheridan's cause of action for wrongful termination in violation of public policy and to enter a new and different order granting that motion and (2) to permit Sheridan to file an amended complaint alleging a cause of action under section 6310, subdivision (b). Touchstone is to recover its costs in this proceeding. Our order staying retrial is to dissolve upon finality of this opinion.

Epstein, P. J., and Manella, J., concurred.

A petition for a rehearing was denied September 7, 2012, and the petition of real parties in interest for review by the Supreme Court was denied November 14, 2012, S205595.