Filed 9/2/20  Behazin v. Dignity Health CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION TWO

| | |
|---|---|
| NEGIN BEHAZIN, | B293805 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. NC060566) |
| v. | |
| DIGNITY HEALTH, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Ramona G. See, Judge.  Affirmed.

Bohm Law Group and Lawrence A. Bohm, Bradley J. Mancuso, and Lindsay L. Bowden; Esner, Chang & Boyer and Stuart B. Esner for Plaintiff and Appellant.

Ballard Rosenberg Golper & Savitt, Linda Miller Savitt, Eric C. Schwettmann, and John J. Manier for Defendant and Respondent.

Negin Behazin (appellant) appeals from a final judgment entered after the trial court granted summary judgment in favor of Dignity Health, Inc. (respondent) on appellant's claims against respondent. At issue in appellant's first amended complaint (FAC) against respondent were only two causes of action: (1) violation of Labor Code sections 98.6 and 1102.5; and (2) adverse action in violation of public policy. The trial court granted summary judgment on these two causes of action on the grounds that appellant did not engage in any activity protected by Labor Code sections 98.6 or 1102.5; and there is no tort cause of action for nonrenewal of a fixed term employment contract such as appellant's. We find no error and affirm the judgment.

## FACTUAL BACKGROUND[1]

### Appellant's educational background

Appellant received her medical education at Islamic Azad University in Tehran, Iran, and thereafter practiced medicine in Iran for five years. In March 2003, she obtained an entry visa into the United States and entered a Ph.D. program in pharmacology at Northeastern University. She left that program after receiving her master's degree in 2005. She was then

_____

[1] Because this matter comes to us after summary judgment proceedings, only uncontested facts are relevant. We note that the parties disagree as to the interpretation of many of the facts concerning appellant's background. Appellant objects that respondent's characterization of appellant as an individual lacking in both medical and social skills is overly one-sided. Respondents, on the other hand, argue appellant made untrue statements on her application for admission and encountered problems with her performance and her interpersonal skills while employed with respondent. Due to the conflicting depictions of appellant's character and skills, we limit our explanation of appellant's background.

2

engaged in medical research at two Boston hospitals for four years.

Appellant entered a preliminary year residency program at St. Mary's Health Center in St. Louis, Missouri (SMHC) for the 2010-2011 academic year. Appellant received an overall satisfactory evaluation for her post-graduate year at SMHC, but she received several marginal evaluations for certain rotations.

On July 1, 2011, appellant began an advanced residency in anesthesiology at the University of Missouri in Columbia, Missouri, where she experienced difficulties, and received unsatisfactory ratings for both her first and second six month reviews. She received no academic credit for the year due to her unsatisfactory rating.

**Appellant's position with respondent's organization**

St. Mary Medical Center in Long Beach, California (SMMC), offered appellant a postgraduate year one position in internal medicine. Appellant accepted, and signed a resident employment agreement that offered a fixed one-year term from June 18, 2013 to June 22, 2014, with no guarantee of renewal. The contract provided, in part, that it "applies only to the stated term hereof and does not imply any guarantee of a training position or employment of any kind in subsequent years." The agreement also explained that if the resident's agreement was not going to be renewed, SMMC would "use its best efforts to provide Resident with a written notice of intent not to renew no later than four (4) months prior to the expiration of this Agreement," but, should the reasons for nonrenewal occur within the last four months preceding the contract's expiration, "Hospital shall provide as much advance notice to Resident as is reasonable under the circumstances."

3

Internal medicine residents such as appellant who have graduated from an international medical school must obtain a California medical license by the end of their third year of training, regardless of whether they received academic credit for each year. Residents are required to begin the process of obtaining a California medical license six months before the applicable cut off date, so that any problems can be resolved in a timely manner. In a letter dated January 17, 2014, the Medical Board of California notified appellant that she needed to submit several additional items to support her medical licensure application, including a "signed and dated personal explanation" of why she did not disclose her SMMC training for 2013-2014 on her application summary.

There were various issues with appellant's performance and progress throughout her residency year at SMMC. In February 2014, appellant's faculty advisor, Sarah Strube, D.O., provided Dr. Chester Choi, the program director, with a list of 16 separate problems and ongoing issues she observed with appellant's performance. On March 18, 2014, in a meeting with Dr. Strube, appellant faced criticism for her performance on her February medical floor rotation. Dr. Strube gave appellant marginal evaluations for the month of February. On March 29, 2014, Bettina Kehrle, M.D., met with appellant to discuss her performance. The next day, Dr. Kehrle provided other supervising doctors with a list of concerns she had about appellant's performance, as she did not believe appellant was meeting the program's standards as compared to her peers.

**March 10, 2014 email**

On March 10, 2014, appellant wrote an email to seven individuals affiliated with the residency program including

4

Dr. Strube, five other doctors, and Maureen Lucey, the nursing director of the ICU. The email was captioned "Questions on transfusion strategies in GI bleed," and included: "The reason I am bringing this case to your attention is that in my opinion it is related to patient safety, and I've noticed that there is no consensus even among the House Staff and the attending physicians at St. Mary on the management of GI bleeds." The email was viewed as a complaint about the ICU nurses, one of whom pressed the code button out of concern that appellant was not giving appropriate orders. Appellant specifically questioned the judgment of a third-year resident in the email, which was considered inappropriate outside of the peer review process.

The next day, Dr. Bahman Chavoshan, one of the email recipients, sent a reply to appellant:

> "I read your e-mail with a significant amount of concern.
>
> "While we encourage our house staff to be involved in quality improvement projects, patient safety assurance, there are proper venues for these activities. An e-mail to a group of people with various levels of responsibility is not one of those avenues.
>
> "The issues of physician practices, et cetera, fall under various committees, including the medical staff association. Openly discussing other physician practices by name outside of a peer review process is never appropriate.
>
> "I know that Dr. Strube and you are planning to meet next week to go over your most recent evaluations. Dr. Choi and/or I will meet with you afterwards.

"Let me also be frankly blunt and clear: the issues of performance (including advancement and disciplining), leave and other privileged information about other house staff members cannot and shall not be discussed."[2]

Appellant's response to Dr. Chavoshan was as follows:

"This is not about questioning another physician's performance. It is about being pressured by ICU staff to give certain orders and be discredited, if not doing so. I have learned from experience that if I refuse to give a certain order, I will be bypassed to the next level and the case is presented to the next person in a way that the order is obtained. I am not questioning [anyone] here. I am questioning the ICU staff's level of comfort with watchful waiting and threshold based transfusion in GI bleed and I wanted to start the discussion with the intensivists here (I wish I could have included all the intensitists [sic] on the email) to come up with a [framework] for ICU staff for manageme[nt] of GI bleed.

"As for leave of absence, I am totally surprised that an intern is on leave of absence fighting for his life and is being ignored to this level by the department. When I worked at Harvard, it was a [routine] practice to let the colleagues know if [someone] was on leave for any family emergency.

_____

[2] The reference in Dr. Chavoshan's e-mail to "leave and other privileged information" pertained to appellant's oral request for the home address of an intern who was being treated for a life-threatening illness, so that appellant and others could send the intern a card and flower arrangement.

Department would send them flower arrangements and an e-mail would inform staff that a card is available to write or sign for that person in such and such room and on such days, so people would go and drop a note of sympathy for their counterpart. The card would then go to that person with flowers via the department. This is NOT a HIPPA [*sic*] violation or invasion to anybody's privacy. I think in this department we are going way extreme in terms of respecting privacy and we're confusing respecting privacy with ignoring. I am very sorry that you have such ill impressions of my intentions in [everything] I do and say.

"Negin

"LET ME BE BLUNTLY FRANK: WE WANT TO SEND FLOWERS AND CARDS TO . . . . . IF THIS STUPID DEPARTMENT CAN NOT [*sic*] ARRANGE FOR IT TO HAPPEN, GIVE US HIS HOME ADDRESS TO TAKE CARE OF IT BY OURSELVES!"

One minute later, appellant sent a second reply to Dr. Chavoshan, which stated in full:

"I AM NOT INTERESTED IN MEETING WITH U [*sic*] BY THE WAY. SEND ME YOUR ADVICE/QUESTIONS VIA EMAIL. [¶] NEGIN"

Three days after this e-mail exchange, appellant was called to a mandatory meeting with SMMC's chief medical officer, Andrew Burg, M.D., and its human resources director, Robert Bokern, to discuss appellant's behavior in sending the emails. At this meeting, appellant was informed that SMMC had decided not to renew her contract. Dr. Burg also discussed the rules

7

under HIPAA, and there was a brief discussion of the incident involving transfusions, which was reviewed with the nursing committee. Contrary to appellant's assertions, the committee determined that the nurses had acted properly.

**Appellant completes her one-year contract with a satisfactory rating**

In a March 2014 communication, Kevin Schunke at the Medical Board, indicated to Dr. Chavoshan that the SMMC program should expect an opening in the residency program in July 2014. This exchange led Dr. Chavoshan to believe that appellant would not receive her medical license before the start of the next academic year.

Appellant was formally notified of SMMC's decision not to renew her employment after completion of her postgraduate year one program by letter from Dr. Burg dated April 1, 2014. Appellant was permitted however, to finish her year one contract term and present a corrective action plan to the committee, to potentially enable her to attain a final rating of satisfactory and receive academic credit for the year. Appellant and Dr. Strube developed a corrective plan for the remainder of appellant's contract term.

Appellant repeatedly asked Dr. Burg and Dr. Choi to reconsider the decision not to renew her contract. June 22, 2014, was appellant's last day of work at SMMC. One day after her residency officially ended, appellant met with Dr. Strube and an administrative assistant to discuss the program's decision not to offer appellant another contract. On June 24, 2014, the manager of academic affairs showed appellant the form filled out by programs to communicate completion of a year of training to the Medical Board of California. The form was completed and signed

8

by Dr. Choi with an attached letter of explanation to the Medical Board.  The letter advised that appellant had finished the year with competencies but that she would not be moving on to a second year, as it was anticipated that she would not have her unrestricted California practice license by July 1, 2014, in time for the start of the new clinical year.

On July 1, 2014, appellant forwarded Dr. Burg, Dr. Choi, and Dr. Chavoshan an email indicating that she had received her California medical license.  Appellant pursued a grievance with SMMC's human resources office, which was denied on October 8, 2014.

## PROCEDURAL HISTORY

Appellant filed a verified complaint for damages on April 1, 2016, which contained causes of action for (1) violation of Health and Safety Code section 1278.5;[3] (2) violation of Labor Code

_____

[3] Health and Safety Code section 1278.5 "declares that it is the public policy of the State of California to encourage patients, nurses, members of the medical staff, and other health care workers to notify government entities of suspected unsafe patient care and conditions."  (Health & Saf. Code, § 1278.5, subd. (a).) The statute further mandates that "[a] health facility shall not discriminate or retaliate, in any manner, against a patient, employee, member of the medical staff, or other health care worker of the health facility" on the grounds that the employee "[p]resented a grievance, complaint, or report to the facility" (§ 1278.5, subd. (b)(1)(A)) or "[h]as initiated, participated, or cooperated in an investigation . . . related to the quality of care, services, or conditions at the facility" among other things. (§ 1278.5, subd. (b)(1)(B).)  Pursuant to subdivision (g), "[a]n employee who has been discriminated against in employment pursuant to this section shall be entitled to reinstatement, reimbursement for lost wages and work benefits caused by the

9

sections 98.6 and 1102.5; (3) violation of Business and Professions Code section 2056; (4) intentional interference with prospective economic relations; and (5) adverse action in violation of public policy. Respondent was named in all causes of action except the fourth, while Drs. Burg, Choi, Strube, and Kehrle (individual defendants) were named on the first, third, and fourth causes of action. The trial court sustained the individual defendants' demurrers to the first, third, and fourth causes of action without leave to amend, dismissing them from the action.

The parties then filed a stipulation allowing appellant to amend her complaint and file the FAC. The stipulation confirmed that appellant agreed to amend her complaint based on recent decisions in *Shaw v. Superior Court* (2017) 2 Cal.5th 983 (*Shaw*) [holding there is no statutory right to a jury trial under Health and Safety Code section 1278.5, subdivision (g)] and *Melamed v. Cedars-Sinai Medical Center* (2017) 8 Cal.App.5th 1271 [suggesting that a one-year statute of limitations may be appropriate for a claim under Health and Safety Code section 1278.5], review granted and transferred for reconsideration on other grounds (Sept. 25, 2019, S245420). Appellant agreed to dismiss her causes of action under Health and Safety Code section 1278.5 and Business and Professions Code section 2056, as well as her cause of action for intentional interference with prospective economic relations.

The trial court approved the parties' stipulation on August 23, 2017, and the FAC was deemed filed. In the FAC, appellant

---

acts of the employer, and the legal costs associated with pursuing the case, or to any remedy deemed warranted by the court pursuant to this chapter or any other applicable provision of statutory or common law."

10

alleged: (1) violation of Labor Code sections 98.6 and 1102.5; and (2) adverse action in violation of public policy.

Respondent filed a motion for summary judgment or, in the alternative, summary adjudication on September 8, 2017 (MSJ). In its supporting memorandum, respondent argued that appellant did not engage in any activity protected by Labor Code sections 98.6 or 1102.5; that California law does not recognize a common law cause of action based on nonrenewal of a fixed term contract; that appellant had no evidence that respondent acted with retaliatory animus, and that she could not overcome the great deference that should be accorded to the residency program's academic and medical judgment. Respondent further argued that appellant lacked clear and convincing evidence of the requisite conduct to support her request for punitive damages.

Appellant filed her opposition papers nearly a year later, on August 15, 2018. Appellant asserted that she was retaliated against for her March 10, 2014 email set forth above. Appellant's opposition did not address respondent's argument that California law does not recognize a tort for wrongful nonrenewal of a fixed term employment contract. Respondent filed a reply on August 24, 2018.

The motion was heard on August 29, 2018. On August 31, 2018, the trial court issued a minute order granting the motion. The trial court ruled that appellant did not engage in any activity protected by Labor Code sections 98.6 or 1102.5 because she did not file a complaint or institute any proceeding, and failed to identify any rule or regulation allegedly violated by respondent. The trial court concluded there was no tort cause of action for nonrenewal of a fixed term employment contract. The court held

11

that appellant's request for punitive damages was moot for the same reasons.

Respondent filed a notice of entry of judgment on September 25, 2018. Appellant filed a notice of appeal on November 9, 2018.

## DISCUSSION

### I. Applicable law and standard of review

The purpose of the summary judgment procedure is to reveal whether "there is no triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).) An issue of material fact is one which "'warrants the time and cost of fact finding by trial.'" (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 162.) The trial court's role is to determine whether such issues of fact exist, not to decide the merits of any such issues. (*California Traditions, Inc. v. Claremont Liability Ins. Co.* (2011) 197 Cal.App.4th 410, 416.) A triable issue of material fact exists if the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

A defendant moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and he is entitled to judgment as a matter of law. (*Aguilar, supra*, 25 Cal.4th at p. 850.) The defendant must show that one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) A defendant may meet this burden by showing that the claim cannot be established due to a lack of evidence on an essential element of the claim. (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 590.)

12

Once the defendant meets this burden, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action or defense. If the plaintiff is unable to show the existence of a triable issue of material fact, summary judgment in favor of the defendant is proper. (*Union Bank v. Superior Court, supra,* 31 Cal.App.4th at p. 590.)

We review the trial court's decision to grant the summary judgment motion de novo, applying the same legal standard as the trial court. (*Nardizzi v. Harbor Chrysler Plymouth Sales, Inc.* (2006) 136 Cal.App.4th 1409, 1414, citing *Paz v. State of California* (2000) 22 Cal.4th 550, 557.)

## II. Labor Code sections 98.6 and 1102.5 (first cause of action)

### *A. Appellant has abandoned any argument under Labor Code section 98.6*

Labor Code section 98.6, subdivision (a) provides, in relevant part, that an employer "shall not discharge an employee or in any manner discriminate, retaliate, or take adverse action against" that employee based on any conduct delineated in this chapter or if the employee has "filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights that are under the jurisdiction of the Labor Commissioner, made a written or oral complaint that he or she is owed unpaid wages, or because the employee has initiated any action or notice pursuant to Section 2699, or has testified or is about to testify in a proceeding pursuant to that section, or because of the exercise by the employee or applicant for employment on behalf of himself, herself, or others of any rights afforded him or her."

13

In its motion, respondent argued that appellant had not engaged in any activity protected under Labor Code section 98.6. Appellant's opposition did not assert any arguments under section 98.6. Neither her opening brief to this court, nor her reply brief, contain any such argument either. Under these circumstances, appellant has abandoned this cause of action, and we do not further review the trial court decision on this claim. (*Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1513.)

### *B. Summary judgment was properly granted as to appellant's claim under Labor Code section 1102.5*

Labor Code section 1102.5, subdivision (b), provides:

"An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of a state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

Labor Code section 1102.5, subdivision (c) prohibits retaliation "against an employee for refusing to participate in an activity that would result in a violation of a state or federal

14

statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."

The FAC quoted both subdivision (b) and subdivision (c) of Labor Code section 1102.5. Under subdivision (c), the employee must specifically identify the activity in which she refused to engage, and the specific statute, rule, or regulation that purportedly would have been violated. (*Nejadian v. County of Los Angeles* (2019) 40 Cal.App.5th 703, 719 [cause of action under Labor Code section 1102.5, subdivision (c) requires employee to "identify what specific activity he or she refused to participate in and what specific statute, rule, or regulation would be violated by that activity"].) Although subdivision (b) requires only "reasonable cause to believe" that there has been a violation of a local, state, or federal rule or regulation, the employee is subject to the same requirement to identify the specific law that the employee believes has been violated. (*Id.* at pp. 718-719).

Appellant did not identify any law, rule, or regulation which she thought had been violated or that she had been asked to violate. Instead, she made vague assertions that her complaints concerned patient safety. Under the circumstances, the trial court properly granted summary judgment.

For the first time on appeal, appellant raises some statutes she claims supported a reasonable belief on the part of appellant that respondent was violating the law. Appellant cites title 42 United States Code section 1320c-5, concerning Medicare, which mandates health care providers assure that medical care be provided "economically, and only when . . . medically necessary," be of "a quality which meets professionally recognized standards of health care," and be "supported by evidence of medical

necessity."[4] Appellant concedes that none of the statutes or regulations raised here were raised in the trial court, but suggests that we consider them as they concern a pure issue of law. (*Ryan v. Real Estate of the Pacific, Inc.* (2019) 32 Cal.App.5th 637, 644 [permitting new question of law presented on appeal based on undisputed facts]; see also *Nippon Credit Bank v. 1333 North Cal. Boulevard* (2001) 86 Cal.App.4th 486, 500.)

Appellant presents no authority that she was not required to specify at the trial court level a law that she reasonably believed to have been broken, as to a claim under Labor Code section 1102.5. *Ross v. County of Riverside* (2019) 36 Cal.App.5th 580 (*Ross*) is distinguishable. In *Ross*, a former assistant district attorney (DA) brought a claim for violation of Labor Code section 1102.5, among other claims, against the county. During his employment, the assistant DA had disclosed to his superiors that the district attorney's office would not be able to prove a particular case beyond a reasonable doubt; lacked probable cause because the defendant's confession was coerced; and that DNA evidence exculpated the defendant. (*Ross*, at p. 592.) The assistant DA recommended dismissing the case based on his belief that prosecuting it would be a violation of the defendant's due process rights as well as a prosecutor's ethical obligations under state law. (*Ibid.*) Although he did not expressly state in his disclosures to his superiors that he believed they would be

_____

[4]    Appellant also cites, for the first time in her opening brief, other federal and state laws she claims are in accord, such as Welfare and Institutions Code section 14059.5; California Code of Regulations, title 22, section 41452 and title 2, section 60323, subdivision (a).

violating these laws, his reasonable belief of such violations was sufficient. (*Ibid.*) *Ross* does not suggest that a plaintiff asserting a claim under Labor Code section 1102.5 need not assert the reasonable belief of a specific violation at some point during the trial court proceedings. *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66 (*Green*), similarly does not advance appellant's position. *Green* rejected a defendant's claim that the plaintiff failed to produce specific statutes at the trial court level where "plaintiff had adequately identified several relevant FAA regulations as part of his opposition to summary judgment." (*Id.* at p. 74.) In contrast, appellant has failed to identify any such statutes during the summary judgment proceedings. Thus, her present arguments must be deemed forfeited on appeal out of fairness to respondent. (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 (*Ochoa*) [point not raised in appellant's opposition papers or during argument on summary judgment motion below, and thus not considered below, is "waived and will not be considered for the first time on appeal"].)

We note that even if we considered these provisions, cited for the first time on appeal, appellant has failed to provide a citation to the record suggesting that appellant reasonably believed that respondent may have acted in a way that violated any of these laws. Appellant does not suggest that she set forth any facts below establishing a belief on her part that respondent was violating these laws in any respect.

The trial court properly granted summary judgment as to appellant's first cause of action for violation of Labor Code sections 98.6 and 1102.5.

### III. Adverse action in violation of public policy (second cause of action)

#### A. *Summary judgment was properly granted*

Appellant's second cause of action is a tort claim based on *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 (*Tameny*). In *Tameny,* the Supreme Court held that when an employee's discharge violates fundamental principles of public policy, the discharged employee may maintain a tort action against his or her former employer and recover damages. (*Id.* at pp. 178-179.)[5]

In its motion, respondent argued that summary judgment should be granted as to this cause of action because California does not recognize a tort claim based on failure to renew a fixed-term employment contract. California courts of appeal have uniformly declined to recognize such a tort. (*Touchstone Television Productions v. Superior Court* (2012) 208 Cal.App.4th 676, 678 (*Touchstone*); *Motevalli v. Los Angeles Unified School Dist.* (2004) 122 Cal.App.4th 97, 102 (*Motevalli*); *Daly v. Exxon Corp.* (1997) 55 Cal.App.4th 39; 43 (*Daly*).) Appellant provided no contrary argument in her opposition to the motion below.

Respondent accurately set forth the law, and appellant forfeited any arguments not presented to the trial court. (*Ochoa, supra*, 61 Cal.App.4th at p. 1488, fn. 3.) Thus, summary judgment of this cause of action was properly granted.

---

[5] A *Tameny* cause of action is not strictly limited to wrongful termination. The tort has been expanded to include lesser forms of discipline, including wrongful demotion of existing employees. (*Garcia v. Rockwell Internat. Corp.* (1986) 187 Cal.App.3d 1556, abrogated on other grounds in *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1093; *Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 473-474.)

***B. The basis of the purported public policy violation
is not determinative***

Because California courts have declined to recognize a tort
for failure to renew a fixed-term contract, the trial court properly
granted summary judgment on this cause of action, regardless of
the specific public policy violation allegedly underlying the claim.
Appellant forfeited any arguments to the contrary by failing to
raise them in the trial court. (*Ochoa, supra,* 61 Cal.App.4th at p.
1488, fn. 3.)

Nevertheless, appellant argues at length in her opening
brief that triable issues of fact remain as to whether respondent's
act of declining to renew her employment contract violated
Health & Safety Code section 1278.5. We note that appellant's
FAC did not allege a direct violation of section 1278.5. Instead, it
alleged a tort cause of action under *Tameny.* As a matter of law,
there is no *tort* cause of action for an employee based on the act of
declining to renew a fixed term employment contract.
(*Touchstone, supra*, 208 Cal.App.4th at p. 678; *Motevalli supra*,
122 Cal.App.4th at p. 102; *Daly, supra*, 55 Cal.App.4th at p. 43.)
Respondent, in moving for summary judgment, was required to
address only the issues raised in the FAC. (*Soria v. Univision
Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 585.) Because
appellant did not allege an actionable adverse action, the court
properly granted summary judgment on this tort cause of action.[6]

_____

[6] Both parties address *Williams v. Sacramento River Cats
Baseball Club, LLC* (2019) 40 Cal.App.5th 280, which was
published after appellant filed her opening brief in this appeal.
*Williams* involved a plaintiff's accusation that an organization
failed to hire him based on his race. The *Williams* court
determined that the plaintiff could not maintain a *Tameny* tort
action against the organization due to the fact that he was a job

*Shaw, supra*, 2 Cal.5th 983, does not suggest otherwise. *Shaw* involved an underlying claim of wrongful termination. (*Id.* at p. 988.) The plaintiff brought two causes of action, one based on violation of Health and Safety Code section 1278.5, subdivision (g), and a second cause of action for wrongful termination in violation of public policy under *Tameny*. (*Shaw*, at p. 988.) The *Shaw* court held that section 1278.5 "is not reasonably understood, as a matter of statutory interpretation, to afford a right to a jury trial." (*Shaw*, at p. 999.) However, the high court confirmed that "in an employee's suit for retaliatory termination, any conduct of the health care facility that would support a cause of action under section 1278.5(g) would also provide a basis for a tort action under *Tameny*. [Citations.]" (*Shaw*, at p. 1004.) *Shaw* does not authorize a tort action for failure to renew a fixed term employment contract.

Appellant's attempt to distinguish *Touchstone* is unconvincing. Appellant asserts that because *Shaw* was decided after *Touchstone*, *Shaw* opened the door to a potential cause of action for nonrenewal of a fixed-term contract because it confirmed that although there is no right to a jury trial directly under Health and Safety Code section 1278.5, a plaintiff can

applicant instead of an employee. The *Williams* court concluded: "Because plaintiff was not an employee, defendant did not owe him a duty; thus, plaintiff's *Tameny* claim must fail." (*Williams*, at p. 288.) While the plaintiff was not without recourse because he could proceed under various statutory and constitutional theories, he could not maintain a tort action against the organization. *Williams* supports the line of cases holding that the wrongful failure to renew a fixed-term employment contract does not support a tort action as the employer has not breached any duty to the fixed-term employee. (*Id.* at pp. 287-288).

20

preserve such jury trial rights by framing the cause of action as a *Tameny* cause of action.  Appellant highlights the following footnote in *Shaw*:

> "In this case, plaintiff seeks recovery for retaliatory termination and thus clearly may maintain an action and obtain a jury trial under *Tameny*.  Because the issue is not before us, we have no occasion to consider under what circumstances a plaintiff in a section 1278.5(g) action who alleges discriminatory treatment other than retaliatory termination has a right to bring a *Tameny* action or is otherwise entitled to a jury trial."

(*Shaw, supra*, 2 Cal.5th at p. 1006, fn. 20.)

The footnote goes on to cite *Daly*, *Motevalli*, and *Touchstone* for the well-settled proposition that a *Tameny* action cannot be based on the failure to renew a fixed term employment contract. (*Shaw, supra,* 2 Cal.5th at p. 1006, fn. 20.)

We find no authority in *Shaw* to expand the scope of existing law regarding *Tameny* tort actions.  Failure to renew a fixed term employment contract is not actionable.  Appellant has not convinced this court that an exception to this settled law should be carved out for purported violations of Health and Safety Code section 1278.5.

### C.  *The hybrid employee-student relationship at issue does not change the result*

Appellant argues that even if *Touchstone,* and the cases in agreement with *Touchstone,* preclude a cause of action for failure to renew an employment contract in violation of public policy, the holding of these cases should not apply to the hybrid employee-student relationship that existed between appellant and

21

respondent.  While appellant has forfeited this argument by declining to raise it below, we address it briefly.  (*Ochoa, supra,* 61 Cal.App.4th at p. 1488, fn. 3.)

Appellant cites *Ezekial v. Winkley* (1977) 20 Cal.3d 267, which holds that a medical resident is entitled to fair procedure prior to his dismissal from a residency program.  She also cites *Stretten v. Wadsworth Veterans Hospital* (9th Cir. 1976) 537 F. 2d 361, 368, which emphasizes a medical resident's property interests, which are "to maintain his income, to complete the residency phase of his medical education, and to protect his professional reputation."  Neither case cited by appellant involved a *Tameny* action.  In fact, both cases pre-date *Tameny.*  Thus, neither case suggests that a medical resident has any greater interest in renewal of a fixed-term contract than other types of employees.

Appellant points to testimony in the record from her expert witness, suggesting that the procedures implemented to carry out the nonrenewal of appellant's employment contract fell below the standard operating procedures of reputable programs and that the residency was a three-year program.  However, the language of the contract that appellant signed was unequivocal, and appellant cites no law suggesting that we should interpret the fixed-term contract in any other way.  Appellant's expert's opinion does not create a legal issue as to the length of the contract term.  We are not inclined to characterize the nonrenewal as a termination, in the absence of legal authority that it should be characterized as such.

Further, as respondent points out, appellant's status as a hybrid employee-student also arguably requires us to give respondent's nonrenewal decision more deference due to

22

respondent's authority to evaluate appellant academically. (See, e.g., *Paulsen v. Golden Gate Univ.* (1979) 25 Cal.3d 803, 808 [recognizing a "widely accepted rule of judicial nonintervention into the academic affairs of schools. [Citations.]"; *Banks v. Dominican College* (1995) 35 Cal.App.4th 1545, 1551 [academic decisions of a private university must be upheld unless they represent "'substantial departure from accepted academic norms'"].) Courts have recognized that in cases involving academic dismissals, under this "highly deferential standard of review, cases challenging academic dismissals often will appropriately be resolved as a matter of law on summary judgment." (*Ibid.*) We need not decide whether respondent abused its discretion in this matter. We merely note that while appellant argues that respondent's nonrenewal decision should be scrutinized more in her case, there are alternative arguments as to why it should be scrutinized less.

Appellant finished her one-year employment contract with a satisfactory rating. No tort claim lies for the nonrenewal of this contract. Appellant has not convinced us that any exceptions apply in this case. Summary judgment was properly granted.

**IV. Request for leave to amend**

Appellant argues that we should reverse the trial court's grant of summary judgment and allow her to pursue a direct cause of action under Health and Safety Code section 1278.5, notwithstanding her previous decision to abandon that claim.[7] In

_____

[7] As set forth above, appellant's initial complaint included a cause of action under Health and Safety Code section 1278.5. However, following demurrers and a stipulation between the parties, appellant agreed to amend her complaint to allege the

23

support of this argument, appellant cites several cases, all of which are distinguishable.

First, appellant cites a line of cases suggesting that the label used to describe a cause of action should not be determinative.  However, none of these cases suggests that an appellate court should permit a plaintiff to amend her complaint to re-allege a previously dismissed cause of action after summary judgment has been granted.[8]

Appellant argues that both *Touchstone* and *Daly* permitted a plaintiff to proceed with a statutory claim even when the courts concluded that the plaintiff could not proceed with a *Tameny* tort claim.  However, the two cases involved different procedural backgrounds.  In *Daly*, the plaintiff appealed after the trial court sustained the defendants' demurrer without leave to amend.

---

two causes of action discussed here.  Thus, she voluntarily dismissed the section 1278.5 cause of action.

[8]     Appellant cites the following cases:  *Bird, Marella, Boxer & Wolpert v. Superior Court* (2003) 106 Cal.App.4th 419 [involving a demurrer]; *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.* (2002) 100 Cal.App.4th 1017, 1034 [reversing summary judgment in favor of insurer where scope of an insurer's duty does not depend on the labels given to the causes of action in the third party complaint but on the facts alleged]; *Ananda Church of Self-Realization v. Mass. Bay Ins. Co.* (2002) 95 Cal.App.4th 1273, 1281-1282 [holding trial court properly sustained demurrer without leave to amend in favor of insurer where insured were accused of stealing documents that were in fact trash]; *Bay Cities Paving & Grading v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 857-858 [holding legal malpractice claim based on two omissions constituted a single claim under policy]; *Big Boy Drilling Corp. v. Rankin* (1931) 213 Cal. 646, 648-649 [holding trial court properly allowed plaintiff to amend its complaint to conform to proof].)

While the *Daly* court confirmed that the plaintiff had no *Tameny* claim because her contract was for a one-year term (*Daly, supra*, 55 Cal.App.4th at p. 45), the matter was remanded because the trial court did not properly consider the plaintiff's claim for statutory damages under Labor Code section 6310. (*Daly*, at p. 43.) The case before us does not involve a demurrer, thus the issue of leave to amend was not a key consideration in the proceedings.

*Touchstone* was a writ proceeding following denial of the defendant's motion for directed verdict. (*Touchstone, supra*, 208 Cal.App.4th at p. 680.) The Court of Appeal issued a writ ordering the trial court to enter a directed verdict in the defendant's favor on the plaintiff's *Tameny* claim because "'[t]he employment contract was for a fixed term and . . . [u]nder a fixed-term contract, the "employment is terminated by . . . [¶] . . . [e]xpiration of its appointed term." [Citation.]' [Citations.]" (*Touchstone*, at p. 681.) However, the plaintiff was permitted to amend her complaint to allege a cause of action under Labor Code section 6310. (*Touchstone*, at p. 684.) The matter was not on appeal from an order of summary judgment, and the defendant did not oppose giving the plaintiff an opportunity to file an amended complaint. (*Id.* at p. 682, fn. 6.) *Touchstone* does not suggest that a plaintiff should be permitted to amend a complaint where, as here, the plaintiff voluntarily dismissed the requested cause of action and did not raise it again throughout summary judgment proceedings in which the defendant prevailed.

Appellant has not convinced this court that she should be permitted to amend her complaint at this stage of the litigation. Summary judgment was properly granted.[9]

## DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs of appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
HOFFSTADT

_____

[9]     Because we affirm the trial court's ruling on the merits, we need not address the order disposing of appellant's claim for punitive damages.